AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
JAN 16 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___rsm___ DEPUTY

United States of America

v.

ERASMO JOSE CORRAL, WENDY XITALI GUTIERREZ, SYLVIA MARTINEZ, and RAMON OLVERA

Defendants

Case No. 2:25-mj-00169-DUTY

FILED
CLERK, U.S. DISTRICT COURT
January 16, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 7, 2025 in the county of Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |
| 18 U.S.C § 924(c) | Using and Carrying a Firearm During and in Relation to a Crime of Violence |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Special Agent Paulette T. M. Taggart, FBI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: January 16, 2025

Judge's signature

City and state: Los Angeles, California

Hon. Alka Sagar, U.S.M.J.
Printed name and title
United States Magistrate Judge.

AUSA: Matt Coe-Odess, x8957

**AFFIDAVIT**

I, Paulette Takora Michelle Taggart, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrants against Erasmo Jose Corral ("CORRAL"), Wendy Xitali Gutierrez ("GUTIERREZ"), Sylvia Martinez ("MARTINEZ") and Ramon Olvera ("OLVERA") for violating of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C § 924(c) (Using and Carrying a Firearm During and in Relation to a Crime of Violence).

2. This affidavit is also made in support of a warrant to search the following digital devices (the "SUBJECT DEVICES"), currently in the custody of the Federal Bureau of Investigation Task Force in Los Angeles, California, as described more fully in Attachment A:

    a. a black iPhone with a sticker, JBAD@JBADTATTOOS, on the back of the phone that was seized from CORRAL on January 8, 2025 ("SUBJECT DEVICE 1");

    b. a light blue iPhone in a gold and purple phone protector seized from GUTIERREZ on January 8, 2025 ("SUBJECT DEVICE 2");

    c. a black phone seized from MARTINEZ on January 14, 2025 ("SUBJECT DEVICE 3"); and

    d. a blue Samsung phone seized from OLVERA on January 14, 2025 ("SUBJECT DEVICE 4").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 1951(a) (interference with commerce by robbery and conspiracy to interfere with commerce by robbery) and 18 U.S.C § 924(c) (Using and Carrying a Firearm During and in Relation to a Crime of Violence) (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. All dates, times, and amounts are approximate.

## II. BACKGROUND OF AFFIANT

5. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2017. I am currently assigned to the FBI's Los Angeles Field Office, Ventura Resident Agency. I am empowered by United States law to conduct investigations of, and make arrests for, offenses enumerated in Title 18 of the United States Code.

6. Since January 2017, I have been assigned to a counterintelligence squad where my primary responsibility was the investigation of matters involving foreign counterintelligence and counterproliferation. Due to the assignment to a smaller resident agency, the scope of my duties included assistance with criminal matters which included gangs, violent crimes, and violent crimes against children.  To that end, I have completed FBI training, executed numerous search warrants, and investigated criminal activity related to both national security and criminal matters. I have received specialized training on the tactics, methods, techniques, and tradecraft of persons engaged in each of those crimes.

7. As of 2022, I was reassigned to a Violent Crime Squad at the Ventura Resident Agency of the Los Angeles Division of the FBI, which investigates criminal gang activity.  I am also a member of the FBI Gang Task Force which includes federal, state, and local gang task force partners.

8. As an SA, I have participated in investigations of various crimes, including assault, murder, gang activity, crimes against children, narcotics, robbery, and firearms trafficking.

### III. SUMMARY OF PROBABLE CAUSE

9. The Oxnard Police Department and the FBI have been investigating two armed robberies.  The first armed robbery occurred at The Home Depot on January 4, 2025 ("The Home Depot Robbery"), and the second armed robbery occurred at Walmart on January 7, 2025 (the "Walmart Robbery) (collectively, the "Subject Robberies").

10. In the Subject Robberies, CORRAL brandished a gun at store employees who attempted to stop members of the robbery crew from stealing. Law enforcement obtained video footage from the Walmart Robbery that showed CORRAL pointing a gun at a Walmart employee.

11. On January 10, 2024, the Oxnard Police Department arrested CORRAL and GUTIERREZ. In a recorded Mirandized interview, CORRAL admitted that he, MARTINEZ (CORRAL's mother), and OLVERA (MARTINEZ's boyfriend) were members of the robbery crew. In a recorded Mirandized interview, GUTIERREZ (CORRAL's girlfriend) admitted that she and the other members of the robbery crew had planned to steal items at the Subject Robberies.

## IV. STATEMENT OF PROBABLE CAUSE

12. Based on my conversations with Oxnard Police Department Officer and Task Force Officer (TFO) Jose Rodriguez, my review of his notes and reports, and my own knowledge of the investigation, I am aware of the following:

**A. CORRAL, GUTIERREZ, MARTINEZ and OLVERA Robbed a Home Depot on January 4, 2025**

13. On the night of January 4, 2025, Oxnard Police Department Officer Timothy Oseguera responded to a Home Depot in Oxnard, California regarding a reported armed robbery. Upon his arrival, Officer Oseguera spoke with a Home Depot employee-victim, K.N.

14. According to a police report, K.N. told Officer Oseguera the following:

4

      a.   K.N. saw three people[1] attempt to leave Home Depot without paying for various power tools. K.N. confronted these people near the front exit of the Home Depot.

      b.   One of these individuals, a young man later identified as CORRAL, turned around, faced K.N., and displayed a gun in his waistband by lifting his shirt with his right arm. K.N. said the gun was inside of a black holster and had a black handle. CORRAL then grabbed the gun with his right hand. K.N. believed it was a Glock-style handgun.

      c.   Upon seeing the gun, K.N. backed away. CORRAL said, "Everybody better back the fuck off or I am about to shoot somebody." K.N. feared for his life. CORRAL, and the older individuals, later identified as MARTINEZ and OLVERA, exited the business without paying for the power tools.

15. A second Home Depot employee-victim, M.O., also saw the incident. M.O. told Officer Oseguera that he saw K.N. confront the three individuals leaving the store. M.O. saw CORRAL pull out a black gun and aim the gun at him and K.N., who was standing nearby.

16. On January 8, 2025, after law enforcement identified CORRAL as a suspect in the Walmart Robbery, as described below, TFO Ryan Carey, with TFO Jose Rodriguez present, separately

---

[1] K.N. described the first subject as a Hispanic female, described as having black or brown wavy hair, in her early 40s to 50s, with dark skin, approximately 5'0" to 5'2", wearing a black jacket and black pants, with scarred skin, and carrying a grey bag in the basket. K.N. described the second subject as a male, in his 50s, with dark skin, wearing a black windbreaker and black pants. K.N. described the third subject as a male, approximately 18-20 years old, with black curly hair, and light skin, wearing a white sweatshirt and black pants.

presented K.N. and M.O. with six photographs and separately asked each of them if the robber was depicted in any of the photographs. K.N. and M.O. each positively identified CORRAL as the man who brandished the gun during The Home Depot Robbery.

17. TFO Ryan Carey, with TFO Jose Rodriguez present, also showed K.N. and M.O. six photographs and separately asked each of them if the Hispanic female was depicted in any of the photographs. M.O. was not able to positively identify anyone, but K.N. positively identified MARTINEZ as the Hispanic Female in the group.

18. As explained further herein, GUTIERREZ admitted that she drove CORRAL, MARTINEZ, and OLVERA to and from The Home Depot Robbery and that she knew they planned to steal items.

    **B.    CORRAL, GUTIERREZ, MARTINEZ and OLVERA Robbed a Walmart on January 7, 2025**

19. Based on my conversations with Oxnard Police Department Detective Jose Rodriguez, my review of his notes and reports, and my review of surveillance footage, I am aware of the following:

20. On the night of January 7, 2025, Oxnard Police Officer Juan Reveles arrived at Walmart in Oxnard, California regarding a reported armed robbery. A loss prevention officer for Walmart, J.R., told Officer Reveles the following:

    a. J.R. saw two men and two women placing items into a cart. The group attempted to leave the Walmart without paying for items. The older female, later identified as MARTINEZ, was originally pushing the cart. After J.R. attempted to stop the group, the younger female, later identified as GUTIERREZ,

grabbed the cart and continued to try and leave. When J.R. tried to stop GUTIERREZ from leaving, GUTIERREZ said, "You want to get shot, homie?"

      b. J.R. then saw the younger male suspect, later identified as CORRAL, grab a black pistol from his waistband, point it in J.R.'s direction, and push the barrel of the pistol into J.R.'s chest. J.R. grabbed the gun from the barrel. J.R. said the gun felt like a heavy metal, which led him to believe it was a real gun.

      c. J.R. backed away from CORRAL. J.R. saw CORRAL point the gun at a second employee-victim, T.C., who was standing at the exit, and a third employee-victim, A.M.R. All three employee-victims said they feared for their lives.

      d. CORRAL and GUTIERREZ fled with the cart containing the stolen items. J.R. saw CORRAL, GUTIERREZ, and two older individuals, later identified to be MARTINEZ and OLVERA, enter what he believed to be a newer model black Honda with black rims and flee southbound on Saviers Road.

21. Walmart provided Oxnard Police Department with surveillance video recordings, as well as a video recording Walmart received from a bystander. Upon reviewing the video recordings, Officer Reveles identified CORRAL as the male suspect holding the gun and wearing a dark blue sweatshirt. Officer Reveles recognized CORRAL based on previous encounters with CORRAL, including instances in which he responded to calls for service at CORRAL's residence.




8



Officer Reveles also recognized the female in the red top and black pants with CORRAL as GUTIERREZ. Officer Reveles said he recognized GUTIERREZ based on the same calls for service involving CORRAL.

    **C.    The Home Depot and Walgreens Operate in and Affect Interstate Commerce**

22.    The Home Depot and Walmart are international corporations that have branches located outside of the state of California. The Home Depot and Walmart both accept credit cards transactions that affect interstate and/or foreign commerce.

    **D.    Oxnard Police Department Officers Arrest CORRAL on January 8, 2025**

        **1.    Law enforcement finds firearms in a vehicle CORRAL was riding, including a firearm that matches the description of the firearm used in the Subject Robberies.**

23.    Based on my own knowledge of the investigation, my conversations with TFO Jose Rodriguez, and my review of Oxnard police department notes and reports, I am aware that on January

8, 2025, Oxnard Police Department Officers conducted a traffic stop of GUTIERREZ's Honda Civic ("GUTIERREZ's VEHICLE")[2] and arrested GUTIERREZ, who was driving, and CORRAL, who was in the front passenger seat, in connection with the Subject Robberies.[3]

24.   During a search of GUTIERREZ's VEHICLE, Officers found a black handgun on the floorboard behind the driver seat near a minor passenger, and a black holster in the front passenger seat between the console and the seat where CORRAL was sitting.  The handgun and holster match the description the victims gave of the handgun used in both armed robberies.[4]  Officers also found a sawed-off rifle behind the front passenger seat near another minor passenger, as well as various knives in the vehicle.




25.   Because CORRAL was on probation and pursuant to CORRAL's terms of probation, Oxnard Police Officers searched

---

[2] GUTIERREZ told law enforcement that she drove GUTIERREZ's VEHICLE to and from the Subject Robberies, and that the car belonged to her.  Law enforcement confirmed through law a enforcement database and Department of Motor Vehicle records that the car was registered to GUTIERREZ.

[3] Two minors were also passengers in the vehicle.

[4] K.N described the gun as a Glock style handgun with a black holster.  T.C. described the gun as a black firearm. A.M.R. described the gun as a small black gun.

10

CORRAL's residence and found another firearm, 28.3 grams of suspected methamphetamine, scales, and suspected methamphetamine packaged for distribution and sale purposes.  Officers found the suspected methamphetamine in a gray safe, which CORRAL confirmed was his.

26.  In my training and experience, narcotics that are packaged and weighed separately are intended for sale rather than for strictly personal use.  Baggies, particularly those with individual compartments or packaging materials, suggest an intention to divide the drugs for sale.  Baggies are commonly used to package drugs into smaller quantities, emphasizing an organized distribution operation rather than for personal consumption.



27.  Based on my review of Criminal Identification and Information ("CII") documents and Consolidated Criminal History Reporting System ("CCHRS") documents, I learned that CORRAL was convicted of the following felony as an adult: California Vehicle Code Section 10851(A): Take Vehicle without owner consent / Vehicle Theft, in the Superior Court of the State of California, County of Ventura, case number 2024010995.  Based on

11

this conviction, I believe CORRAL is prohibited from lawfully possessing firearms and ammunition. CORRAL is currently on active probation and has probation terms to not possess, own, or have access of firearms and ammunition.

> **E. In a Mirandized interview, CORRAL Admitted to Participating in the Subject Robberies**

28. On January 10, 2025, Detective/TFO Diego Estrada and Detective/TFO Jose Rodriguez interviewed CORRAL at the Ventura County Jail. The interview was audio recorded. After being advised of his Miranda rights and waiving those rights, CORRAL stated the following:

    a. CORRAL, GUTIERREZ, MARTINEZ, and OLVERA participated in the Subject Robberies.

    b. CORRAL, MARTINEZ, and OLVERA planned to steal items from The Home Depot. CORRAL claimed GUTIERREZ did not know they planned to steal items, although, as explained below, GUTIERREZ admitted she knew the plan.

    c. When a Home Depot employee suspected OLVERA and MARTINEZ of stealing, MARTINEZ called GUTIERREZ's cell phone from OLVERA's cell phone. CORRAL re-entered the store and pulled a gun on The Home Depot employee as The Home Depot employee tried to stop MARTINEZ and OLVERA from leaving. GUTIERREZ drove CORRAL, MARTINEZ, and OLVERA away.

    d. Three days later, when a Walmart employee attempted to stop MARTINEZ and GUTIERREZ from leaving without paying for items, CORRAL showed the employee his gun and placed the gun on the employee's hip.

  e. CORRAL, GUTIERREZ, MARTINEZ, and OLVERA, all sold the stolen items from the Subject Robberies together.

  f. CORRAL admitted to participating in another robbery at Ralph's grocery store in Port Hueneme California on December 24, 2024. CORRAL said MARTINEZ and OLVERA participated in that robbery.

**F. In a Mirandized interview, GUTIERREZ Admitted to Participating in the Subject Robberies**

29. On January 10, 2025, Detective/TFO Estrada and Detective/TFO Rodriguez interviewed GUTIERREZ at the Ventura County Jail. The interview was audio recorded. After being advised of her Miranda rights and waiving those rights, GUTIERREZ stated the following:

  a. GUTIERREZ, CORRAL, MARTINEZ and OLVERA, participated in the Subject Robberies. GUTIERREZ, CORRAL, MARTINEZ, and OLVERA planned to steal at Walmart and Home Depot.

  b. GUTIERREZ did not enter The Home Depot during the Home Depot Robbery but drove CORRAL, MARTINEZ, and OLVERA to and from The Hope Depot with the understanding that CORRAL, MARTINEZ, and OLVERA were going to steal items.

30. GUTIERREZ entered Walmart during the Walmart Robbery and physically pulled the shopping cart full of stolen items away from a store employee as she attempted to leave.

**G. Video Surveillance of the Walmart Robbery Confirms that MARTINEZ and OLVERA Were Members of the Robbery Crew**

31. Based on my own knowledge of the investigation, my conversations with TFO Jose Rodriguez, and my review of Oxnard

13

police department notes and reports, I understand that on January 15, 2025, MARTINEZ and OLVERA were arrested in connection with the Subject Robberies. I compared the booking photos of MARTINEZ and OLVERA with screenshots from video recordings of the Walmart Robbery. I believe a comparison of these photographs corroborates CORRAL's and GUTIERREZ's statements that MARTINEZ and OLVERA were members of the robbery crew.

  

*Booking Photo of MARTINEZ*

*Walmart Surveillance Footage*

  

*Booking Photo of OLVERA*      *Walmart Surveillance footage*

14

## II. TRAINING AND EXPERIENCE REGARDING ROBBERIES AND FIREARMS OFFENSES

32. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

   a.   Persons who use firearms in criminal activities, like robberies, tend to illegally purchase the firearms so that firearms will not be traced back to them.

   b.   Persons who use firearms in criminal activities, like robberies, also tend to favor "ghost guns" that is, firearms that have no distinguishable manufacturer's mark or serial number, also to avoid law enforcement tracing the firearms back to them.

   c.   Persons who use firearms in criminal activities, like robberies, additionally tend to favor using stolen firearms, again, to prevent law enforcement from tracing the firearm back to them.

   d.   Persons who possess or purchase firearms generally keep their firearms on their person or store their firearms in either their residences or their vehicles.

   e.   Persons who possess or purchase firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residences, or in places that are readily accessible, like their vehicles, and under their physical control, such as in their digital devices. It has been my experience that individuals who purchase firearms

illegally will keep the contact information of the individual who is supplying the firearms for future purchases or referrals. Such information is also typically kept on digital devices or in the person's residence or vehicle.

        f.    Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

        g.    Those who illegally possess firearms, or possess firearms for the purpose of engaging in criminal activity, often sell their firearms and purchase firearms. Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price. In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that they sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

## **V. CONCLUSION**

33. For all of the reasons described above, there is probable cause to believe that CORRAL, GUTIERREZ, MARTINEZ and OLVERA committed violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C § 924(c) (Using and Carrying a Firearm During and in Relation to a Crime of Violence).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 16th day of
January, 2025.

_____
HON. ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE